IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | : | Case No. 1:12cv337 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | |
| | : | ORDER GRANTING IN PART AND |
| THE GREEN PLANTAIN, LTD, *et al*., | : | DENYING IN PART PLAINTIFF'S |
| | : | MOTION FOR PARTIAL SUMMARY |
| Defendant. | : | JUDGMENT |
| | : | |

This matter is before the Court on Plaintiff J& J Sports Productions, Inc.'s motion for partial summary judgment.[1] (Doc. 13.) Plaintiff alleges that Defendants the Green Plantain, LTD (the "Green Plantain") and Angela Ortiz illegally intercepted a satellite communication for a closed-circuit boxing match and showed the match to patrons at their commercial establishment. Plaintiff brings three claims: (1) violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 (unauthorized use of radio/satellite communications); (2) violation of the Cable & Television Consumer Protection and Competition Act, 47 U.S.C. § 553 (unauthorized use of cable communications); and (3) conversion. Plaintiff moves for summary judgment on the issue of liability for claims one and two. For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

I.      BACKGROUND[2]

Plaintiff J & J Sports Productions, Inc. (Plaintiff or "J & J Sports") is a closed-circuit distributor of sports and entertainment programming. Plaintiff retains the nationwide

---

[1] Plaintiff styled it as a Motion for Summary Judgment; however, Plaintiff has only moved for summary judgment as to liability on two of the three claims.

[2] Plaintiff did not file Proposed Undisputed Facts, as required by the Court's Standing Order Governing Civil Motions for Summary Judgment ("Standing Order"). The Standing Order is available at "Judge Susan J. Dlott– Forms and Procedures," http://www .ohsd.uscourts.gov/judges/dlott/Standard% 20Order.pdf. For purposes of this Order, the background facts are derived from the pleadings and attachments thereto.

commercial distribution rights to the Floyd Mayweather vs. Shane Mosley fight program (the "Program"), which was broadcast on May 1, 2010.  Closed Circuit Television License Agreement ("License Agreement"), Doc. 13-1 at Page ID # 62.  Pursuant to the License Agreement, Plaintiff entered into sub-licensing agreements with various commercial establishments to permit the public exhibition of the Program.  Gagliardi Aff. ¶ 3, Doc. 13-1 at Page ID # 50.  Customers interested in broadcasting the Program paid a commercial sublicense fee, which was based on the capacity of the establishment.  *Id.* at ¶ 8.

Joseph Gagliardi, the president of J & J Sports, asserts in his affidavit that sales have eroded in recent years due to piracy of J & J Sports's broadcasts by unauthorized and unlicensed establishments.  *Id.* at ¶ 4.  Consequently, Plaintiff now polices its signals to identify and prosecute commercial establishments that pirate Plaintiff's programming.  *Id.* at ¶ 5.  Specifically, Plaintiff hires auditors and law enforcement personnel to investigate and canvass suspected establishments to identify whether the establishments are illegally broadcasting programs for which they paid no licensing fees.  *Id.* at ¶ 6.

In this case, investigator Susan Wesley arrived at the Green Plantain on May 1, 2010 at 10:45 p.m.  Wesley Aff., Doc. 13-1 at Page ID # 57.  Ms. Wesley paid no cover charge to enter the establishment.  *Id.*  Ms. Wesley determined that the capacity for the establishment was 120 persons.  *Id.*  On three occasions during the time she was there (approximately one hour and fifteen minutes), Ms. Wesley counted the number of people in attendance.  *Id.*  Ms. Wesley counted 19, 21, and 21 people, respectively.  *Id.*  Ms. Wesley observed four televisions located inside the establishment—one behind the bar, two by the front entrance, and one in the corner of the establishment, opposite the bar.  *Id.*  All four televisions were tuned to the Program.  *Id.*  Ms.

Wesley's report makes no mention of advertisements for the Program, nor Ms. Wesley's knowledge as to whether Defendants were charging enhanced fees for food and drinks.

Gagliardi asserts that Defendants did not have sub-licensing rights to broadcast the Program on May 1, 2010. Had the Defendants legally purchased the rights to broadcast the Program, they would have paid $6,200, which is based on the size and capacity of the establishment—in this case, the maximum fire code occupancy of 120 persons. *Id*. at ¶ 8, Doc. 13-1 at Page ID # 50. Gafliardi asserts that its programming "cannot be mistakenly, innocently or accidentally intercepted" and that J & J Sports has lost "several millions of dollars of revenue" as a result of the pirating of its programming. *Id*. at ¶¶ 9, 11.

Defendant Ortiz, the owner of the Green Plantain, submitted an affidavit in opposition to the motion for partial summary judgment. Ortiz Aff., Doc. 16-1 at Page ID # 109. Ms. Ortiz asserts that the Green Plantain was a sit-down restaurant that did not otherwise function as a sports bar. *Id*. at ¶ 3. On May 1, 2010—the date of the Program, Ms. Ortiz was ill and unable to work.[3] *Id*. Ms. Ortiz asked her son, Joseph Feliciano, and her husband, Leodan Ortiz, to cover for her at the restaurant. *Id*. at ¶ 4.

Unbeknownst to Ms. Ortiz, Feliciano had previously purchased the Program from Ms. Ortiz's residential satellite provider, DirectTV. *Id*.; Feliciano Aff. ¶ 5, Doc. 16-2 at Page ID # 113. Feliciano intended to watch the Program with friends at the home he shared with Ms. Ortiz. Feliciano Aff. ¶ 5. Because he did not want to miss the fight, Feliciano removed the satellite receiver from the residence and brought it to the restaurant that evening.[4] *Id*. When he

---

[3] Later in the month of May, Ms. Ortiz was diagnosed with kidney failure. Ortiz Aff. ¶3, Doc. 16-1 at Page ID # 110. As a result of her illness and inability to work, the restaurant closed toward the end of May 2010. *Id*.
[4] In his affidavit, Feliciano refers to a "cable box." Feliciano Aff. ¶ 5, Doc. 16-2 at Page ID # 113. However, both Feliciano and Ms. Ortiz confirm that they have DirecTV at their residence. *See id*.; Ms. Ortiz's Ans.to Pl.'s

connected the receiver to one of the restaurant's televisions, all four televisions began broadcasting the Program. *Id*. Feliciano asserts that he did not know how to show separate programs on separate televisions, so he simply left all four televisions tuned to the Program. *Id*. He invited several friends to the restaurant to view the Program. *Id*. He asserts that he originally invited these friends to watch the Program at his home. *Id*. He asserts that the restaurant did not charge a cover for admission that night. *Id*. ¶ 6.

Ms. Ortiz asserts that she was unaware of her son's actions and only became aware of the incident several months later when she received a letter from Plaintiff. Ortiz Aff. ¶ 4–5. Ms. Ortiz asserts that she did not authorize the showing of the Program. *Id*. at ¶ 4. She also asserts that the restaurant did not advertise for the Program broadcast, nor did the restaurant charge a cover for admission at any time, including the evening of Saturday, May 1, 2010. *Id*.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

---

Interrog. ¶¶ 19–20.  The Court takes judicial notice that DirecTV is a direct broadcast satellite provider.  This distinction (cable v. satellite) will be relevant to the determination of whether § 605 or § 553 applies to this action.

(1986). That is, the nonmoving party must present sufficient evidence to permit a reasonable jury to find in that party's favor. *Id*.

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## III. ANALYSIS

Plaintiff moves for partial summary judgment as to liability on Defendants' alleged violations of both 47 U.S.C. §§ 553 and 605. Plaintiff does not seek damages through this motion, so the Court will address the issue of liability only. *See* Pl.'s Mot. Summ. J. p. 4 n. 3, Doc. 13 at Page ID # 44.

### A. Applicable Law

Section 553(a)(1) makes it illegal to intercept or receive without authorization any communications service offered over a cable system. 47 U.S.C. § 553.[5] Under § 553, a party may recover actual damages, or, in the alternative, an award of statutory damages for all violations involved in the action in an amount not less than $250 but not greater than $10,000. 47 U.S.C. § 553(c)(3)(A)(i) and (ii). Because there is no *mens rea* or scienter element for a

---

[5] "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

violation of section 553, intent is immaterial to liability. *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08cv1259, 2009 WL 1767579, at *4 (N.D. Ohio June 22, 2009). However, where the court finds that the violation was committed willfully and for purpose of commercial advantage or private financial gain, the court, in its discretion, may increase the award of damages, either actual or statutory, by an amount not more than $50,000. 47 U.S.C. § 553(c)(3)(B). Section 553 also provides for an award of costs and reasonable attorney's fees. 47 U.S.C. § 553(c)(2)(C).

Section 605(a) prohibits the unauthorized interception of radio communications. 47 U.S.C. § 605.[6] That section has been read as outlawing satellite signal piracy. *Cablevision of Michigan, Inc. v. Sports Palace, Inc.*, No. 93-1737, 1994 WL 245584, at *3 (6th Cir. June 6, 1994). Section 605 permits the aggrieved party to recover actual damages or statutory damages of not less than $1,000 or more than $10,000 for each violation. 47 U.S.C. § 605(e)(3) (C)(i)(I) and (II). Section 605 is likewise a strict liability statute. *See Easterling*, 2009 WL 1767579 at *4. Also similar to § 553, where the court finds that the violation was committed willfully and for purpose of commercial advantage or private financial gain, the court, in its discretion, may

---

[6] Section 605(a) provides, in pertinent part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. 605(a).

increase the award of actual or statutory damages by an amount not to exceed $100,000. 47 U.S.C. § 605(e)(3)(C)(ii). Section 605 also permits an award of costs and reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii).

Although sections 533 and 605 are facially similar, "Sections 553 and 605(a) reach different conduct." *Cablevision of Michigan, Inc. v. Sports Palace, Inc.*, 27 F.3d 566, 1994 WL 245584, at *3 (6th Cir. 1994). Essentially, "Section 605(a) may be read as outlawing satellite signal piracy, while Section 553 bans only the theft of programming directly from a cable system." *Id.*; *see also J & J Productions, Inc. v. Schmalz*, 745 F.Supp.2d 844, 849 (S.D. Ohio 2010). "For instance, where a program is broadcast 'over a cable system, and not via a satellite signal ... § 605(a) is inapplicable' and summary judgment denying claims brought under § 605(a) is appropriate." *Joe Hand Promotions, Inc. v. WCI, Inc.*, No. 3:10–cv–422, 2011 WL 6755935, at *3 (S.D. Ohio Dec. 22, 2011) (quoting *Schmalz*, 745 F.Supp.2d at 850). "Conversely, where 'Defendants intercepted and received ... satellite signal without authorization[,]' § 553(a) is inapplicable." *Id.* (quoting Potopsky, 2011 WL 2648610 at *3 (denying summary judgment in favor of plaintiff on a § 553(a) claim because defendant intercepted a satellite signal).

In this case, the record shows that the Program was broadcast at the Green Plantain over a satellite signal, rather than a cable system,[7] and the parties agree that the case should proceed only under section 605(a).[8]

---

[7] *See* Ms. Ortiz's Ans.to Pl.'s Interrog. ¶¶ 19–20; Feliciano Aff. ¶ 5, Doc. 16-2 at Page ID # 113
[8] Pl.'s Mot. Summ. J. p. 5, Doc. 13 at Page ID # 45; Defs.' Opp. p. 2, Doc. 16 at Page ID # 104. Plaintiff, therefore, is not entitled to summary judgment as to liability under § 553 and the Court will deny this part of Plaintiff's motion.

B. Liability

Plaintiff asserts liability against both the Green Plantain and its owner, Angela Ortiz, individually. The Court will address each defendant in turn.

1. The Green Plantain

Because section 605(a) is governed by a strict liability standard, Plaintiff need only show that: (1) the Program was shown at the Green Plantain; (2) the Program was shown without authorization by Plaintiff; and (3) Plaintiff was the exclusive licensee. *See* 47 U.S.C. § 605(a).

As to each of these three elements, the evidence in the record demonstrates that there is no genuine dispute as to any material facts and Plaintiff is entitled to judgment as a matter of law. It is undisputed that the Program was shown at the Green Plantain on May 1, 2010. *See* Wesley Aff., Doc. 13-1 at Page ID # 57; Feliciano Aff. ¶ 5, Doc. 16-2 at Page ID # 113. It is undisputed that Plaintiff did not sub-license the Program to the Green Plantain. Gagliardi Aff. ¶ 3, Doc. 13-1 at Page ID # 50. It is undisputed that Plaintiff was the exclusive licensee. *See* License Agreement, Doc. 13-1 at Page ID # 62. Consequently, the Court will grant Plaintiff's motion as to liability under § 605 as against the Green Plantain. Plaintiff does not seek summary judgment on these damages, so the Court will not address the issue at this time.

2. Angela Ortiz

A more difficult question is whether individual liability should be imposed against Defendant Ortiz. Where a plaintiff attempts to hold both a corporation and an individual liable for violation of § 605, courts have held that "[i]ndividual liability under the Cable Act requires that the individual authorize the underlying violations." *J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469, 473 (E.D.N.Y. 2009). In other words, the plaintiff "must establish that the individual had a 'right and ability to supervise' the violations, as well as an

8

obvious and direct financial interest in the misconduct.'" *Id*. *See also J & J Sports Prods., Inc. v. Ribeiro*, 562 F.Supp.2d 498, 501 (S.D.N.Y. 2008) (quoting *J & J Sports Prods., Inc. v. Tonja Meyers, et al.*, No. 06 Civ. 5431 (BSJ) (JCF), 2007 WL 2030288, *3 (S.D.N.Y.2007)); accord *Joe Hand Promotions, Inc. v. Blanchard*, No. 409CV100, 2010 WL 1838067, *3 (S.D.Ga. May 3, 2010) (citing *J & J Sports Prods., Inc. v. Arboleda*, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, *5 (M.D. Fla. Oct. 27, 2009)).

Here, it is undisputed that Ms. Ortiz was not present on the night of the violation. The record indicates that Ms. Ortiz was extremely ill and unable to work on May 1, 2010. Ortiz Aff. ¶ 3, Doc. 16-1 at Page ID # 110. Ms. Ortiz states in her affidavit that she did not authorize the showing of the Program and that she did not learn of this incident until several months later, when she was contacted by Plaintiff. *Id*. at ¶¶ 4–5.

The Court finds that a genuine dispute exists as to whether Ms. Ortiz authorized the underlying violation and as to whether Ms. Ortiz had an ability to supervise the violation. As such, the Court will deny Plaintiff's motion as to liability under § 605 as against Ms. Ortiz.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** Plaintiff's motion as to liability under § 605 as against the Green Plantain and **DENIES** Plaintiff's motion as to liability under § 605 as against Ms. Ortiz. The Court also **DENIES** Plaintiff's motion as to liability under § 553 as against both defendants.

IT IS SO ORDERED.

S/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court